## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF GEORGIA
## MACON DIVISION

KEVIN KELLY,

       Plaintiff,

v.

WAL-MART STORES, INC.,

       Defendant.

CIVIL ACTION FILE NO:

  5:12-CV-413

## COMPLAINT

Plaintiff, Kevin Kelly, by and through counsel, hereby files this Complaint against Wal-Mart Stores, Inc. (hereafter "Wal-Mart" or "Defendant") and alleges as follows:

### INTRODUCTION

1.

This is an action to recover for violation of Plaintiff Kelly's rights under the Title I of the Americans with Disabilities Act of 1990, as amended by the ADA Amendments Act of 2008.  Plaintiff sues on account of the fact that he was denied accommodation for his ocular disability and, ultimately, fired in retaliation for his opposition to discriminatory practices and willingness to file a charge of discrimination in order to remedy the adverse actions taken  against him on

account of his disability.  Plaintiff is seeking back pay, compensatory and punitive damages and attorneys' fees to remedy these violations of federal law.

## JURISDICTION AND VENUE

2.

The jurisdiction of this Court is invoked pursuant to 42 U.S.C. § 12101 *et seq.* (the "ADAAA"), 28 U.S.C. §§ 1331 and 1343(a)(4), and 28 U.S.C. §§ 2201 and 2202.

3.

Venue is proper pursuant to 28 U.S.C. § 1391 in that the unlawful employment practices and the violations of Plaintiff's rights alleged below were committed in this judicial district.

## PARTIES

4.

Plaintiff, Kevin Kelly, is a legal resident and citizen of the United States and of the State of Georgia.  Plaintiff was formerly a Customer Service Manager for Wal-Mart and submits himself to the jurisdiction of this Court.

5.

Plaintiff is and, at all times relevant hereto, was an individual with a disability as that term is defined under 42 U.S.C. § 12102(1).

6.

Plaintiff is a person with a disability inasmuch as he actually has a physical impairment causing substantial limitation in one or more major life activities and because he was regarded as having such an impairment.

7.

Defendant Wal-Mart is a Delaware Corporation that is registered to do business and is doing business in Georgia.   It may be served by delivering process to its registered agent, Corporation Process Company, 2180 Satellite Blvd, Suite 400, Duluth, Georgia 30097.

8.

Defendant is an "employer" within the meaning of the ADAAA, 42 U.S.C. § 12101 *et seq.*, because it has engaged in commerce or in an industry affecting commerce within the meaning of the ADAAA and has employed more than 15 persons for each working day in each of 20 calendar weeks in the current or preceding calendar year.

## ADMINISTRATIVE PROCEEDINGS

### 9.

Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission within 180 days of the occurrence of the acts of which he now complains.

### 10.

On or about July 19, 2012, Plaintiff received a Notice of Right to Sue from the EEOC relating to his charge of discrimination, charge number 846-2009-54150. This civil action is instituted in the appropriate federal district court within ninety (90) days of the receipt of said Notice.

## STATEMENT OF FACTS

### 11.

Defendant Wal-Mart is a global discount retailer employing more than 1.3 million associates worldwide. Wal-Mart has one of its "supercenter" stores, store number 3750 located at 502 Booth Road in Warner Robins, Georgia.

### 12.

Plaintiff worked for Wal-Mart at its Booth Road location from approximately May 2006 to approximately November 2009.

13.

In May, 2006, Plaintiff began working for Wal-Mart as an Assembler but was promoted several months later to an "In-Stock" Associate position.

14.

While working stocking shelves, Plaintiff severely injured his left arm and was assigned to light duty work answering phones.

15.

In approximately December 2008, Plaintiff was promoted to Customer Service Manager and given responsibility over the cashiers, store cart handlers and customer service.

16.

In general, Plaintiff's job was to ensure the cashier lines ran smoothly, customers were accommodated and the carts were regularly retrieved, stored and available for use.

PLAINTIFF'S DISABILITY

17.

When he began work for Wal-Mart, among others, Plaintiff was suffering from an optical nerve impairment called Optic Neuritis, which is an inflammation

of the optic nerve that substantially limited his ability to see normally, causing light sensitivity and constant, debilitating, migraine headaches.

18.

To control the headaches, Plaintiff's neurologist prescribed wearing sunglasses at all times, even indoors, because bright lights were a trigger for the headaches.

19.

The sunglasses were effective at reducing his headaches to one or two per week and decreasing their severity so that they were not incapacitating.

20.

Plaintiff wore wrap-around sunglasses whenever he was working at Wal-Mart.

WAL-MART'S INITIAL REFUSAL TO
ACCOMMODATE PLAINTIFF'S DISABILITY

21.

Plaintiff was a valued employee at Wal-Mart, having been promoted twice and never receiving any discipline until after store manager Jason Metts took over and objected to Plaintiff wearing sunglasses.

22.

Jason Metts was hired as store manager for the Booth Road store in or around March of 2009.

23.

Beginning in approximately April or May, 2009, Mr. Metts began to question and ridicule Plaintiff about his sunglasses, telling him that he really didn't need them and saying that he only wore them to "look cool for the customers."

24.

Plaintiff told Metts that the sunglasses were prescribed by his doctor but Meets refused to believe it and was unconcerned.

25.

Eventually, Metts told Plaintiff that he could no longer wear sunglasses in the store and that he could not come to work if he wore them.

26.

In May 2009, Plaintiff obtained a Wal-Mart work accommodation request form and had it completed by his doctor, who confirmed that Plaintiff had been diagnosed with Optical Neuritis, that he had a visual disability and that he needed sunglasses as an accommodation.

27.

Metts refused to consider the accommodation request, refused to offer any other alternatives and refused to allow Plaintiff to work so long as he wore his sunglasses.

28.

At no time did Metts or anyone at Wal-Mart suggest that *not* wearing sunglasses was an essential function of Plaintiff's job.

29.

At no time did Metts or anyone at Wal-Mart suggest that allowing the accommodation Plaintiff was requesting would cause Wal-Mart an undue hardship.

30.

Plaintiff did try to perform his job without sunglasses but his migraines returned and he found himself unable to work full days.

31.

Because Plaintiff needed his sunglasses as an accommodation, he was forced to take unpaid leave, while trying to convince Metts and Wal-Mart to allow him to wear them.

32.

Plaintiff was out of work for over a month during which time he tried contacting various managers up the chain of command to the office of the Vice President and President of Wal-Mart.  He also contacted the Equal Employment Opportunity Commission ("EEOC"), accusing Wal-Mart of disability discrimination.

WAL-MART PICKS THE SUNGLASSES
AND REQUIRES PLAINTIFF TO PAY

33.

Eventually, after obtaining a second prescription and complaining as high up the chain of command as he was able, Plaintiff was allowed to come to work and pick out Wal-Mart sunglasses as long as they were approved by Metts and Plaintiff paid for them himself.

34.

Because the approved sunglasses cost $100, Plaintiff was unable to pay for them directly and had to have his wages garnished.

35.

Moreover, while Wal-Mart did allow Plaintiff to return to work, it refused to compensate him for the pay he lost while out of work.

36.

Plaintiff was refused compensation for these losses despite having informed the highest Wal-Mart officials of his need for accommodation and mistreatment.

DAMAGES FROM WAL-MART'S REFUSAL TO ACCOMMODATE

37.

Wal-Mart's refusal to accommodate Plaintiff or even engage in the interactive process and refusal to allow Plaintiff to come into work for over a month as well as its refusal to reimburse him the leave time he used and the wages he lost was done willfully, in bad faith and in violation of the ADAAA.

38.

The effect of Defendant's above-stated actions has been to deprive Plaintiff of employment opportunities, income in the form of wages, prospective employment benefits, including social security and other benefits to which he would have been entitled but for Defendant's illegal actions.

39.

The effect of Defendant's above-stated actions has also caused Plaintiff to suffer out-of-pocket losses and mental and emotional distress for which he seeks compensation.

DISPARATE TREATMENT & RETALIATION

40.

Wal-Mart allowed Plaintiff to return to work the first of August 2009.

41.

Although Plaintiff had never had any discipline problems and had always been a good employee, immediately following his return, Plaintiff was shunned by his managers, refused assistance when it was needed and subjected to punishing shift changes.

42.

For instance, Plaintiff was often scheduled both to close and open the store, which allowed him only four or five hours of sleep.

43.

In addition, immediately following his return to work, Plaintiff began to suffer from constant criticism and petty write-ups that had not been a problem before his request for accommodation and that were not a problem for other managers.

44.

The write ups and criticisms originated from interaction with one of three managers: Metts, the Assistant Manager Ryan Kronberg, or Front-End Manager Michelle Egler.

45.

Each of these managers was friends with the other and they met regularly to discuss discipline of employees and other store operations.

46.

During the short period from August to October, Plaintiff received at least three write-ups for petty and improbable offenses.

47.

For example, few days after returning to work with his accommodation, Plaintiff was denied sufficient cashiers to handle a large number of customers.

48.

Faced with long customer lines and an insufficient number of cashiers, Plaintiff complained to Manager Michelle that she needed to start scheduling more cashiers.  Plaintiff was immediately written up for back-talking.

49.

On another occasion he was written up for allegedly improperly securing a deposit bag.

50.

Then on a third occasion he was written up for allegedly hanging up on Assistant Manager Kronberg after being denied additional help with customer service overflows.

51.

On this third occasion, Plaintiff was required to write an apology in order to keep his job.

52.

Finally, early in October, Plaintiff slipped and fell on some debris in the store aisle.  Plaintiff was again written up, this time for wearing improper shoes.

53.

At the time that he fell, Plaintiff had been wearing the same style rubber soled cowboy boots that he had been wearing to work for the entire time he worked at Wal-Mart.

54.

Plaintiff had never before been reprimanded or written up for a wardrobe or uniform violation other than the issue surrounding his sunglasses and at least one other employee regularly wore cowboy boots.

55.

On this occasion, however, Plaintiff was not only written up but also fired.

56.

The write-ups and termination were all for petty, implausible transgressions that were unfairly disciplined inasmuch as no other manager or employee was being written up for such minor offenses, much less fired for them.

57.

Each of the write-ups and Plaintiff's ultimate termination were all in retaliation for his complaints of disability discrimination, both internally and to the EEOC, and on account of his disability or Wal-Mart's perception of him as a disabled employee.

DAMAGES FROM RETALIATION

58.

Plaintiff's mistreatment by his managers, including the write-ups and his ultimate termination was willful, done in bad faith and in retaliation for Plaintiff's

insistence upon an accommodation, opposition to discriminatory practices and participation in filing with the EEOC.

59.

The effect of Defendant's above-stated retaliatory actions has been to further deprive Plaintiff of employment opportunities, income in the form of wages, prospective employment benefits, including social security and other benefits to which he would have been entitled but for Defendant's illegal actions.

60.

The effect of Defendant's above-stated actions has also caused Plaintiff to suffer further out-of-pocket losses and mental and emotional distress for which he seeks compensation.

<strong>COUNT ONE<br>VIOLATION OF ADAAA – ACTUAL DISABILITY</strong>

61.

The Plaintiff incorporates by reference all of the preceding paragraphs of this Complaint.

62.

At all times relevant hereto, Defendant Wal-Mart has been subject to the requirements of Title I of the Americans with Disabilities Act as amended by the ADAAA.

- 15 -

63.

At all times relevant hereto, Plaintiff was an individual with a disability as defined under the Americans with Disabilities Act, 42 U.S.C. § 12102 (1)(A) inasmuch as he has an optical nerve impairment that substantially and adversely affects his vision by precluding exposure to normal light intensity without the onset of debilitating migraines.

64.

Moreover, at all times relevant hereto, Plaintiff was a qualified individual with a disability as that term is defined by 42 U.S.C. § 12111 (8) and was able to perform the essential functions of his job inasmuch as Plaintiff had worked for Wal-Mart for approximately three years with no negative performance reviews or disciplinary history.

65.

Defendant was aware of Plaintiff's disability through observation and because Plaintiff had specifically discussed it with Store Manager Metts and numerous managers and officers up the chain of command.

66.

Despite his qualifications and strong past performance, Plaintiff was initially denied a reasonable accommodation – the right to wear sunglasses – that posed no undue hardship on Wal-Mart.

67.

AS a result of Defendant's initial refusal to engage in the interactive process and reasonably accommodate Plaintiff's disability, Plaintiff had to take unpaid leave of absence and, ultimately, spend his own money to obtain sunglasses of Wal-Mart's choosing.

68.

Moreover, after belatedly agreeing to provide Plaintiff with the right to wear his sunglasses, Wal-Mart treated him more harshly than other managers by writing him up for petty offenses and ultimately terminating his employment all on account of his disability and, as further outlined below, in retaliation for engaging in protected activity and participating in an EEOC proceeding related to his claims.

69.

Defendant's actions amount to a violation of Section 102 of the ADAAA, 42 U.S.C. § 12112, which prohibits discrimination on the basis of disability.

70.

As a direct and proximate result of Defendant's intentional discrimination, Plaintiff has suffered out of pocket losses and has been deprived of job-related economic benefits, including income in the form of wages and other job related benefits, including social security, all in an amount to be established at trial.

71.

In addition, Defendant's actions have caused, continue to cause, and will cause the Plaintiff to suffer damages for emotional distress, mental anguish, loss of enjoyment of life, and other non-pecuniary losses all in an amount to be established at trial.

72.

Moreover, Plaintiff is entitled to be reinstated to employment by Defendant and, if reinstatement is not feasible, Plaintiff is entitled to an award of damages for future lost wages and benefits of employment.

73.

Finally, Plaintiff is entitled to punitive damages in order to punish Defendant for its willful and malicious acts and in order to deter it from further such actions in violation of the ADAAA.

## COUNT TWO
### <u>VIOLATION OF ADAAA – REGARDED AS DISABLED</u>

74.

The Plaintiff incorporates by reference all of the preceding paragraphs of the Complaint.

75.

At all times relevant hereto, Defendant Wal-Mart has been subject to the requirements of Title I of the Americans with Disabilities Act as amended by the ADAAA.

76.

At all times relevant hereto, Plaintiff was an individual with a disability as defined under the Americans with Disabilities Act, 42 U.S.C. § 12102 (1)(C) inasmuch as he was regarded as a person with an impairment as defined by the Act.

77.

Moreover, at all times relevant hereto, Plaintiff was a qualified individual with a disability as that term is defined by 42 U.S.C. § 12111 (8) and was able to perform the essential functions of his job inasmuch as Plaintiff had worked for Wal-Mart for approximately three years with no negative performance reviews or disciplinary history.

78.

Defendant was aware of Plaintiff's impairment through observation and because Plaintiff had specifically discussed it with Store Manager Metts and numerous managers and officers up the chain of command.

79.

Despite his qualifications and strong past performance, Plaintiff was initially sent home, forced to take unpaid leave and was ultimately fired because of his impairment and because Defendant regarded him as disabled.

80.

Defendant's actions amount to a violation of Section 102 of the ADAAA, 42 U.S.C. § 12112, which prohibits discrimination on the basis of disability.

81.

As a direct and proximate result of Defendant's intentional discrimination, Plaintiff has suffered out of pocket losses and has been deprived of job-related economic benefits, including income in the form of wages and other job related benefits, including social security, all in an amount to be established at trial.

82.

In addition, Defendant's actions have caused, continue to cause, and will cause the Plaintiff to suffer damages for emotional distress, mental anguish, loss of

enjoyment of life, and other non-pecuniary losses all in an amount to be established at trial.

### 83.

Moreover, Plaintiff is entitled to be reinstated to employment by Defendant and, if reinstatement is not feasible, Plaintiff is entitled to an award of damages for future lost wages and benefits of employment.

### 84.

Finally, Plaintiff is entitled to punitive damages in order to punish Defendant for its willful and malicious acts and in order to deter it from further such actions in violation of the ADAAA.

## COUNT THREE
## VIOLATION OF ADAAA – RETALIATION

### 85.

The Plaintiff incorporates by reference all of the preceding paragraphs of the Complaint.

### 86.

At all times relevant hereto, Defendant Wal-Mart has been subject to the requirements of Title I of the Americans with Disabilities Act as amended by the ADAAA.

87.

By complaining to his store manager and further up the chain of command concerning the denial of his request for accommodation and the necessity that he take unpaid leave, Plaintiff was opposing practices that were unlawful under the ADAAA.

88.

By contacting the EEOC, Plaintiff was participating in proceedings under the ADAAA.

89.

As a result of the above stated opposition and participation, Plaintiff suffered adverse employment actions up to and including discharge from employment that were committed with reckless disregard for Plaintiff's their right to be free from discriminatory and retaliatory treatment on account of protected activity in violation of the ADAAA, 42 U.S.C. § 12203(a).

90.

As a direct and proximate result of Defendant's intentional retaliation, Plaintiff has suffered out of pocket losses and has been deprived of job-related economic benefits, including income in the form of wages and other job related benefits, including social security, all in an amount to be established at trial.

91.

In addition, Defendant's actions have caused, continue to cause, and will cause the Plaintiff to suffer damages for emotional distress, mental anguish, loss of enjoyment of life, and other non-pecuniary losses all in an amount to be established at trial.

92.

Moreover, Plaintiff is entitled to be reinstated to employment by Defendant and, if reinstatement is not feasible, Plaintiff is entitled to an award of damages for future lost wages and benefits of employment.

93.

Finally, Plaintiff is entitled to punitive damages in order to punish Defendant for its willful and malicious acts and in order to deter it from further such actions in violation of the ADAAA.

## **RELIEF**

Plaintiff demands a TRIAL BY JURY and requests the following relief:

(a)    judgment in favor of Plaintiff and against Defendant under Counts One, Two and Three for its unlawful employment practices in violation of the ADAAA;

(b)     an injunction prohibiting Defendant from engaging in unlawful employment practices in violation of the ADAAA;

(c)     damages sufficient to make Plaintiff whole by providing for out-of-pocket losses as well as back pay in an amount equal to the sum of any wages, salary, employment benefits or other compensation denied or lost as a result of Defendant's unlawful and discriminatory acts, together with interest thereon, all in an amount to be proven at trial;

(d)     compensatory damages for Plaintiff's mental and emotional distress incurred as a result of Defendant's unlawful actions alleged under Counts One, Two and Three;

(e)     reinstatement to Plaintiff's former position with Defendant, or in the alternative, front pay to compensate Plaintiff for lost future wages and benefits;

(f)     punitive damages for Defendant's willful and intentional violations of the ADAAA as provided by 42 U.S.C. § 12117(a)(as amended) and alleged in Counts One, Two and Three;

(h)     reasonable attorneys' fees and costs; and

(i)     other and further relief as the Court deems just and proper.

Respectfully submitted,

JF BEASLEY, LLC

By:   /s/ John F. Beasley, Jr.
       John F. Beasley, Jr.
       Georgia Bar No. 045010
       jfbeasley@jfbeasleylaw.com

31 North Main Street
P.O. Box 309
Watkinsville, GA 30677
Telephone:  706-769-4410
Facsimile:   706-769-4471

Counsel for Plaintiff